UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

STEPHANIE and MICHAEL STIBOR,

        Plaintiffs,

and

WISCONSIN PHYSICIANS SERVICE
INSURANCE CORPORATION,

        Subrogated Plaintiff,        Case No. 04-C-1255

    v.

ETHICON, INC.,
LIFECORE BIOMEDICAL, INC., and
KRISTA JACOBSON,

        Defendants.

_____

ORDER

On November 22, 2004, plaintiffs Stephanie and Michael Stibor, both residents of Wisconsin, filed a personal injury action in Milwaukee County Circuit Court against defendants Ethicon, Inc. ("Ethicon"), a resident of New Jersey, Lifecore Biomedical, Inc. ("Lifecore"), a resident of Minnesota, and Krista Jacobson, a resident of Wisconsin.[1]  On December 30, 2004, Ethicon removed

---

[1] Subrogated plaintiff Wisconsin Physicians Service Insurance Corporation is also a resident of Wisconsin.

this action pursuant to 28 U.S.C. § 1441 on the ground Jacobson's joinder was fraudulent.

FACTUAL BACKGROUND

This case arises out of a severe reaction Stephanie Stibor suffered after her doctor applied a medical device known as Intergel to her abdominal cavity following an outpatient laparoscopic surgery on January 7, 2003. (Compl. ¶ 6.) Specifically, she suffered non-infectious foreign body reactions and tissue adherence after the procedure, which was performed by Dr. Katherine Von Fossen. (*Id.*) During the procedure, Van Fossen ablated endometriosis and then applied Intergel. (*Id.*) Shortly after arriving home, Stibor began experiencing severe abdominal bloating, cramping, and pain. (*Id.* ¶ 7.) She immediately returned to her doctor and reported the pain was so intense she could not sleep. (*Id.*)

Stibor was diagnosed as suffering from a severe intra-abdominal reaction to the Intergel. (*Id.* ¶ 8.) She suffered pain, distention, fever, and regression of her gastrointestinal function. (*Id.*) Her physicians drained fluid from a pelvic mass on January 31, 2003, and she was hospitalized from February 11 to February 18. (*Id.* ¶ 9.) Finally, on February 25, 2003, she underwent surgery to remove her pelvic mass (*Id.*) As a result of the severe and permanent scarring to her reproductive system, it is probable she will never be able to have children.

On March 28, 2003, Intergel was withdrawn from the market because of complications such as those suffered by Stibor. (Cabaniss Aff. Ex. A.)

Lifecore manufactured Intergel, which is an orange, gel-like medical device intended to reduce adhesion formation following gynecological surgeries. (*Id.* ¶¶ 5, 11.) Lifecore initially sought approval from the U.S. Food and Drug Administration ("FDA") to sell Intergel for use following general gynecological procedures in the United States, and on January 12, 2000, the FDA's General and Plastic Surgery Devices Panel recommended Lifecore's application be denied. (Cabaniss Aff. Ex. C.) Following that denial, Lifecore amended its application asking the FDA approve Intergel for "conservative gynecological pelvic surgery," which would exclude patients undergoing laparoscopic procedures like the one Stibor had. (*Id.*) On November 15, 2000, the FDA denied the amended application, and Lifecore requested a review of the denial by the Medical Devices Dispute Resolution Panel. (*Id.*) The FDA ultimately approved on November 16, 2001, Intergel for conservative gynecological pelvic surgery. (*Id.*)

Pursuant to an agreement with Lifecore, Ethicon began marketing and selling Intergel throughout the United States beginning in November 2001. (Compl. ¶ 12.) Jacobson, an Ethicon sales representative, together with other Ethicon sales representatives, made a presentation to Von Fossen and other physicians at Froedtert Memorial Hospital. (*Id.* ¶ 14.) At that presentation,

Ethicon representatives, including Jacobson, recommended Intergel was safe for use following general gynecological surgeries. (*Id.*)

In their complaint, plaintiffs allege, *inter alia*, that Lifecore, Ethicon, and Jacobson

> 12. . . . represented to physicians that (1) Intergel was a "safe solution" with the safety profile comparable to competing products; (2) that Intergel had been proven to reduce surgical adhesions by up to 59%; (3) that twice as many patients treated with Intergel remained completely adhesion-free; (4) that Intergel reduces moderate and severe adhesions by up to 5-fold versus control; and (5) that the product was sterile.
>
> 13. Defendants knew that their representations as set forth in the preceding paragraph were false and misleading. Studies conducted by defendants reveal that Intergel was not nearly as safe as the leading alternative treatment. In fact, defendants understood and recognized that the risk of infection was double in patients treated with Intergel as opposed to alternative treatments.
>
> 14. In addition to advertising Intergel in a false and misleading manner, the defendants also promoted the product with physicians in general and to Dr. Van Fossen for "off-label uses." In particular, defendants' sales representative, defendant Krista Jacobson, told Dr. Von Fossen and other physicians that the product was safe for laparoscopic surgeries even though the product had never been approved by the FDA for this use and even though its studies reveal that the use of Intergel resulted in significantly higher rates of injury with absolutely no reduction in adhesions.
>
> 15. Shortly after placing Intergel on the market, defendants began receiving reports from physicians and patients indicating that Intergel was causing serious and life threatening complications. The complications included extreme pain,

-4-
Case 2:04-cv-01255-JPS   Filed 07/27/05   Page 4 of 10   Document 37

swelling, fever and additional adhesions. At no time was the plaintiff, Dr. Van Fossen or other health care providers warned of the growing body of defendants' knowledge of the injuries caused by Intergel. Defendants withdrew Intergel from the market following plaintiff's injury.

. . . .
. . . .

25. Defendants were negligent in their manufacturing, marketing, sale, distribution and warnings with respect to Intergel.

26. The negligence of defendants was a proximate cause of damages and injuries suffered by plaintiffs.

(Compl. ¶¶ 12-15, 25-26.)

## DISCUSSION

This court is not deprived of original jurisdiction under 28 U.S.C. § 1332 (*i.e.*, diversity jurisdiction) if the joinder of non-diverse parties is fraudulent. *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993). The joinder of a non-diverse party is fraudulent if a diverse defendant can show there is no reasonable possibility the state court would rule against the non-diverse defendant if all issues of law and fact were resolved in favor of the plaintiffs. *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999)*; Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992). As such, the diverse defendant bears a heavy burden of proof to establish fraudulent joinder. *Poulos*, 959 F.2d at 73.

Here, Ethicon, the diverse defendant, does not come close to meeting its burden of proof. First, it fails to show there is no reasonable possibility the Wisconsin courts would rule against Jacobson on the negligence cause of action if all issues of fact were resolved in the plaintiffs' favor. A plaintiff must prove four things to establish a claim for negligence in Wisconsin: (1) the existence of a duty of care on the part of the defendant; (2) a breach of that duty of care; (3) a causal connection between the defendant's breach of that duty of care and the plaintiff's injury; and (4) actual loss or damage resulting from the injury. *Gritzner v. Michael R.*, 611 N.W.2d 906, 912 (Wis. 2000). A plaintiff establishes the existence of a duty of care on the part of the defendant whenever it was foreseeable to the defendant that his or her act or omission to act might cause harm to some other person. *Id.* at 912.[2] The general framework governing the duty of care in Wisconsin negligence actions is as follows:

> A person is negligent when [he or she] fails to exercise ordinary care. Ordinary care is the care which a reasonable person would use in similar circumstances. A person is not using ordinary care and is negligent, if the person, without intending to do harm, does something (or fails to do something) that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property.

*Gritzner*, 611 N.W.2d at 912-13 (quoting Wis. JI-Civil 1005).

---

[2] Wisconsin does not follow the majority view in *Palsgraf v. Long Island Railroad Co.*, 162 N.E. 99, 99-101 (N.Y. 1928), under which the existence of a duty of care depends upon whether injury to the particular victim was foreseeable. *See Gritzner*, 611 N.W.2d at 912. n.3.

Here, the allegations in the plaintiffs' complaint are plainly sufficient to state a cause of action against Jacobson for negligence under Wisconsin law. Ethicon concedes the plaintiffs' complaint alleges Jacobson made false and misleading statements to Von Fossen about the safety and effectiveness of Intergel and promoted its use for procedures which were not approved by the FDA. (Defendant's Br., at 2 (citing Compl. ¶¶ 13, 14)). As such, a reasonable person could certainly recognize this act by Jacobson as creating an unreasonable risk of harm to Von Fossen's patients because it would have been foreseeable that Von Fossen would rely on these statements and use Intergel on her patients.

Second, Ethicon fails to show there is no reasonable possibility the Wisconsin courts would preclude a finding of liability against Jacobson if all issues of law were resolved in favor of the plaintiffs. In Wisconsin, a defendant is not liable for an injury even though a plaintiff proves the elements of negligence if the court concludes public policy considerations preclude liability as a matter of law. *Gritzner*, 611 N.W.2d at 913 and 914 (citing *Rockweit*, 197 Wis. 2d at 425). Public policy considerations which may legally preclude liability include the following: (1) the injury is too remote from the negligence; (2) the injury is too wholly out of proportion to the tortfeasor's culpability; (3) in retrospect it appears too highly extraordinary that the negligence should have resulted in the harm; (4) allowing recovery would place too unreasonable

-7-
Case 2:04-cv-01255-JPS   Filed 07/27/05   Page 7 of 10   Document 37

a burden on the tortfeasor; (5) allowing recovery would be too likely to open the way for fraudulent claims; and (6) allowing recovery would enter a field that has no sensible or just stopping point. *Gritzner*, 611 N.W.2d at 914.

Here, there is simply nothing in the record to show there is no reasonable possibility the Wisconsin courts would not preclude liability against Jacobson for public policy reasons. Ethicon concedes no Wisconsin court has ever held a sales representative like Jacobson is precluded from liability in this type of case, and remarkably, it fails to direct the court to a single public policy consideration which could even serve as the basis for such a holding. Moreover, the cases Ethicon cites from various district courts outside the Seventh Circuit do nothing to establish there is no reasonable possibility the Wisconsin courts would rule in favor of Jacobson.[3] While the courts in those cases did find the sales representatives for manufacturers of medical devices and pharmaceuticals were fraudulently joined, those cases are clearly distinguishable on the facts and law from the case at bar. In light of the foregoing, the court is obliged to remand this case to the state court.

---

[3] *Walker v. Medtronic*, No. 1:03CV74-D-D, 2003 WL 21517997 (D. Miss. June 4, 2003); *Dacosta v. Novartis AG*, No. CV 01-800-BR, 2002 WL 31957424 (D. Oregon March 1, 2002); *In re Rezulin Products Liability Litigation*, 133 F. Supp. 2d 272, 282 (S.D.N.Y. 2001); *Dacosta v. Novartis AG*, 180 F. Supp. 2d 1178, 1183 (D. Oregon 2001).

One final matter: the plaintiffs request an award for the reasonable costs and actual attorneys fees incurred in responding to Ethicon's petition for removal. Title 28, chapter 89, section 1447(c) of the United States Code authorizes the court to award "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Section 1447(c) is a fee shifting provision, not a sanctions rule, so it is not necessary that the court find the petition for removal was made in bad faith; rather, the operative standard is whether the defendant's position was "substantially justified." *In re: Wal-Mart Emple. Litig.*, 271 F. Supp. 2d 1080, 1085 (E.D. Wis. 2003).

Here, the court is obliged to conclude Ethicon's position was not substantially justified because, as already discussed, the plaintiffs' complaint plainly states a cause of action for negligence against Jacobson, there is nothing in the record to suggest the Wisconsin courts would preclude a finding of liability, and the extra-circuit cases cited by Ethicon are clearly distinguishable. As such, the court is constrained by the record to award the plaintiffs the just and reasonable costs and actual attorneys' fees incurred in responding to Ethicon's petition for removal.

Accordingly,

IT IS ORDERED that the plaintiffs' motion to remand (Docket #25) be and the same is hereby GRANTED;

IT IS FURTHER ORDERED that this action be and the same is hereby REMANDED to the state court; and

IT IS FURTHER ORDERED that the plaintiffs be and the same are hereby AWARDED the just and reasonable costs and actual attorneys fees incurred in responding to Ethicon's petition for removal.

The clerk of the court is directed to take all appropriate steps to implement the remand.

Dated at Milwaukee, Wisconsin, this   27th   day of July, 2005.

BY THE COURT:

 s/ J. P. Stadtmueller
J. P. Stadtmueller
U.S. District Judge